Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 05 C 6288 | **DATE** | 8/3/2007 |
| **CASE TITLE** | United Taxidermists vs. Illinois Department of Natural Resources | | |

**DOCKET ENTRY TEXT**

MOTION by Defendant Illinois Department of Natural Resources for summary judgment [48] is granted. Status hearing set for 8/15/2007 is stricken.  Civil Case Terminated.

■[ For further details see text below.]

Notices mailed by Judicial staff.
*Mail AO 450 form.

## STATEMENT

Plaintiff United Taxidermists Association ("UTA") has sued the Director of the Illinois Department of Natural Resources ("IDNR"), alleging that the IDNR has conducted and will continue to conduct warrantless searches of licensed taxidermists that were not authorized by statute, rule, or regulation, in violation of 42 U.S.C. § 1983.  Plaintiff seeks a declaratory judgment that these searches violated the Fourth Amendment of the United States Constitution and asks the Court to grant any appropriate relief, including prospective injunctive relief and an award of fees and costs.  Defendant has filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c).  Plaintiff, without filing a summary judgment motion of its own, asks the Court to *sua sponte* grant summary judgment to the Plaintiff.  For the following reasons, the Court grants Defendant's motion and denies Plaintiff's request.

## BACKGROUND

### I.    The Parties' Dispute

On November 1, 2005, UTA filed a complaint alleging that IDNR has conducted and will continue to conduct warrantless searches of taxidermists in violation of the Fourth Amendment of the United States Constitution.  (R. 1-1, Compl. ¶¶ 6, 7.)  UTA is a voluntary association of 31 taxidermists headquartered in Antioch, Lake County, Illinois.  (R. 51-1, Def.'s Stmt. of Facts ¶¶ 1, 4.)  Each UTA member is licensed to practice taxidermy in Illinois through Defendant IDNR.  (*Id.* ¶ 1.)  Pursuant to the Illinois Wildlife Code (the

| STATEMENT |
| --- |

"Code"), IDNR is authorized to manage wildlife and regulate the taking of wildlife within the State of Illinois, and to enforce the provisions of the Code "for the purposes of providing public recreation and controlling wildlife populations." 520 ILCS 5/1.3, 5/1.19. The Code provides for licensing of taxidermists by IDNR, 520 ILCS 5/3.21(a), and IDNR Conservation Police Officers conduct administrative inspections of licensed taxidermists in Illinois. (R. 51-1, Def.'s Stmt. of Facts ¶ 12.)

Plaintiff seeks a declaratory judgment that IDNR searches of "taxidermy records" contravene the Fourth Amendment to the Constitution of the United States. (R. 1-1, Compl. at 3.) On April 18, 2007, Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). (R. 48-1) Defendant argues that its inspections are constitutional because (1) taxidermy is a highly regulated business; (2) Illinois has a substantial interest in regulating the taxidermy industry; (3) warrantless searches are necessary to Illinois' regulatory scheme; and (4) the inspection program provides a constitutionally adequate substitute for a warrant. (R. 49-1, Mem. in Supp. of Mot. for Summ. J.) In response, Plaintiff argues that IDNR's searches are not necessary to further Illinois' regulatory scheme, and that the inspection program does not provide a constitutionally adequate substitute for a warrant. (R. 55-1, Pl.'s Mem. in Opp'n to Mot. for Summ. J.) With regard to its second point, Plaintiff claims that when the Code provides for warrantless searches of "taxidermy records," it does not provide notice of searches for origin tags and labels, which are not within the scope of that term.

## II.     Relevant Statutory Provisions

520 ILCS 5/3.21 outlines the types of records that licensed taxidermists must maintain and states that "taxidermy records" are subject to inspection. The portion of the Code relevant to the parties' dispute provides:

(b) Taxidermists shall keep written records of all birds or mammals, or parts thereof, received or returned by them. Records shall include the following information:

(1) The date the bird or mammal was received.

(2) The name and address of the person from whom the bird or mammal was received.

(3) The number and species of each bird or mammal received.

(4) The number and state of issuance of the hunting or trapping license, or special Department permit, of the individual from whom the bird or mammal was received. In the absence of a license or permit number, the taxidermist may rely on the written certification of the person from whom the bird or mammal was received that the specimen was legally taken or obtained, or, in the event the individual is exempt from the apposite license requirements, an indication of such exemption.

(c) All birds or mammals or parts thereof that have been received, preserved or mounted or possessed by a taxidermist are required to bear a coded origin tag or label. The origin tag or label shall correspond with written records containing more complete information as required

2

**STATEMENT**

by the Department.

(d) Taxidermy records shall be open for inspection by any peace officer at any reasonable hour.  Taxidermists shall maintain records for a period of 2 years from the date of receipt of the bird or mammal or for as long as the specimen or mount remains in the taxidermist's possession, whichever is longer.  The Department may require the taxidermist to submit to it such information as it deems necessary.

520 ILCS 5/3.21(b) - (d).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining summary judgment motions, courts construe the facts and all reasonable inferences in the light most favorable to the non-moving party. *Id.* at 255.  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]hen a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby*, 477 U.S. at 250 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

Plaintiff argues that the IDNR searches violate the Fourth Amendment.  The Fourth Amendment is applicable to the states through the Fourteenth Amendment and provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Bleavins v. Bartels*, 422 F.3d 445, 450 (7th Cir. 2005) (quoting U.S. Const. amend IV).  The parties have submitted short statements of facts together with their briefs, but these facts are irrelevant to the parties' dispute, which, as the following discussion will make clear, is purely legal.  Plaintiff does not dispute the lack of any factual issue here, and instead relies on legal arguments to combat summary judgment and argue for summary judgment in its favor.  (*See* R. 55-1, Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 2 (stating that the controversy in this case relates to IDNR's "construction of Illinois law"), 9 ("because the facts are not in dispute, the Court should *sua sponte* grant summary judgment to plaintiff").)

The Supreme Court has recognized that owners of commercial property, like owners of private residences, enjoy an expectation of privacy under the Fourth Amendment. *New York v. Burger*, 482 U.S. 691, 699 (1987).  This expectation is somewhat limited in the commercial context, however, and it "is particularly attenuated in commercial property employed in 'closely regulated' industries." *Id.* at 700.  "For [a warrantless search in a closely regulated industry] to be reasonable, *Burger* mandates that (1) a substantial government interest must inform the regulatory scheme; (2) the warrantless inspections must be necessary to further the scheme; and (3) the inspection program must provide a constitutionally adequate substitute for a

3

| STATEMENT |
| --- |

warrant." *Contreras v. City of Chicago*, 119 F.3d 1286, 1290 (7th Cir. 1997). After considering *Burger,* the Seventh Circuit has permitted warrantless searches in several closely regulated industries. *See, e.g., Second City Music, Inc., v. City of Chicago*, 333 F.3d 846, 848 (7th Cir. 2003) (sellers of used merchandise); *Contreras*, 119 F.3d at 1290-1291 (restaurants); *Lesser v. Espy*, 34 F.3d 1301, 1306 (7th Cir. 1994) (rabbitries); *LeRoy v. Illinois Racing Bd.*, 39 F.3d 711, 713-15 (7th Cir. 1994) (horse racing).

## I.       Closely Regulated Industry

The threshold inquiry determining the applicability of the *Burger* test asks whether the taxidermy industry is "closely regulated." As Plaintiff apparently concedes, Illinois' statutory scheme for taxidermy demonstrates that it is. In determining whether an industry is pervasively regulated, a court looks at the duration and extent of regulation. *Lesser*, 34 F.3d at 1307. To analyze the extent of regulation, courts look to factors including whether practitioners are required to obtain a license and maintain and allow inspection of records, and whether practitioners are subject to punishment for non-compliance. *Id.* All of these factors are present here. Taxidermists are required to (1) obtain a license, 520 ILCS 5/3.21(a); (2) maintain written records, 520 ILCS 5/3.21(b); (3) tag animals or parts thereof, 520 ILCS 5/3.21(c); and (4) allow inspection of taxidermy records. 520 ILCS 5/3.21(d). The Code further provides specific penalties for noncompliance. 520 ILCS 5/3.5(c). Furthermore, the taxidermy regulations at issue here were enacted at the time of adoption of the Wildlife Code in 1972, rendering them a longstanding regulatory scheme. *See* Ill. P.A. 77-1781, eff. July 1, 1972. The legal provisions regulating taxidermists are extensive, and the industry is closely regulated.

## II.      Substantial Government Interest and Inspections Necessary to Scheme

Plaintiff argues that tagging searches are unreasonable under the Fourth Amendment because the tagging requirement in 520 ILCS 5/3.21(c) does not further a "substantial government interest." The Code, however, satisfies the *Burger* requirements that (1) a substantial government interest informs the regulatory scheme; and (2) the warrantless inspections are necessary to further the scheme. *See Contreras,* 119 F.3d at 1290.

Plaintiff's argument that "the tagging requirement of 520 ILCS 5/3.21(c) does not further a 'substantial government interest'" (R. 55-1, Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 6) is irrelevant under *Burger*. *Burger* first asks whether "a substantial government interest . . . inform[s] the regulatory scheme," *Contreras,* 119 F.3d at 1290 (citing *Burger,* 482 U.S. at 702), thus inquiring into the relationship between the regulatory scheme as a whole and a government interest, rather than the government interest involved in any particular component of the scheme. Plaintiff's argument is also inapposite to the second requirement, which "requires only that warrantless searches *in general* [are] necessary to further the regulatory scheme," and "does not give courts the task of evaluating the necessity of each particular aspect of a regulatory scheme." *Contreras,* 119 F.3d at 1290 (emphasis in original). As a result, the Court need not analyze whether the tagging requirement itself furthers a substantial government interest.

### A.       Substantial Government Interest

The government has a substantial interest in regulating the taxidermy industry. As the Illinois

4

| STATEMENT |
| --- |

Supreme Court has explained, "[b]y its terms, [520 ILCS 5/3.21] reflects the broader concern of the General Assembly when it enacted the Wildlife Code to protect and regulate the hunting and capture of certain species." *People v. Taylor*, 561 N.E.2d 667, 672 (Ill. 1990). The Court went on to state that "[i]t is apparent from the structure of the Code that the taxidermy licensing requirement, with its concomitant regulatory scheme, was enacted as a further means to ensure that protected animals are taken in compliance with the other provisions of the Code." *Id.* Regulations on taking of animals in turn serve the broader governmental interest of "providing public recreation and controlling wildlife populations." 520 ILCS 5/1.3. Indeed, Plaintiff itself explicitly declined to challenge the recordkeeping requirements of the Code because they serve these government interests. (R. 55-1, Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 3-4.)

Even if the Court were required to examine whether tagging in particular furthers a substantial government interest, the tagging requirement would pass the test. To further its goal of ensuring that animals are taken in compliance with its provisions, the Code requires that taxidermists maintain written records on birds or mammals in their possession, including information on the person from whom the animal was received as well as information on that person's hunting or trapping license. 520 ILCS 5/3.21(b). It also requires taxidermists to tag their animals to connect each animal to a corresponding written record. *Id.* at 5/3.21(c). Finally, it states that "[n]o taxidermist shall have in his or her possession any bird or mammal that is not listed in his written records and properly tagged or labeled." 520 ILCS 5/3.21(g). The tags further Illinois' interests in ensuring that animals are properly taken by allowing inspectors to ensure that written record entries – which indicate when a given animal was taken, and by whom – properly correspond to the tags on animals in a taxidermist's possession.

## B. Inspections Necessary to Further Scheme

Plaintiff does not dispute that warrantless inspections are necessary to further the regulatory scheme. Plaintiff not only declined to raise this issue in its briefing, but it also explicitly agreed that it "does not object to the requirement of the administrative inspections and does not object to the inspection of [taxidermy records other than tags]." (R. 54-1, Pl.'s Resp. to Def.'s Stmt. of Facts ¶ 9.) As a result, the Court need not consider this issue further.

## III. Adequate Substitute for a Warrant

"*Burger*'s third prong requires that the regulatory statutes that authorize warrantless searches must perform two of the functions that warrants do: (1) an owner of a searched premises must be advised that the search is pursuant to the law and has a properly-defined scope, and (2) the discretion of the inspecting officers must be limited." *Contreras*, 119 F.3d at 1290 (citing *Burger*, 482 U.S. at 703). "To perform this first function, the statute must be 'sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware his property will be subject to periodic inspections undertaken for specific purposes.'" *Burger*, 482 U.S. at 703 (quoting *Donovan v. Dewey*, 452 U.S. 594, 600 (1981)). "In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be 'carefully limited in time, place, and scope.'" *Burger,* 482 U.S. at 703 (quoting *United States v. Biswell*, 406 U.S. 311, 315 (1972)).

5

**STATEMENT**

**A.    Scope of Searches**

Plaintiff challenges the permissible scope of the warrantless searches, arguing that while the Code provides notice of searches for "taxidermy records," that term only encompasses written records, and not origin tags and labels. The Code, however, provides adequate notice that inspecting officers may examine taxidermy tags, thus Plaintiff's argument fails.

The Code provides that "[t]axidermy records shall be open for inspection by any peace officer at any reasonable hour." 520 ILCS 5/3.21(d). "Taxidermy" is a broad term, defined in the Code as "the art of preparing, preserving, and mounting the skins of fish, birds, or mammals to make them appear lifelike." 520 ILCS 5/1.2x. The Illinois Supreme Court, relying on a dictionary definition, has similarly defined taxidermy as "the art of preparing, stuffing and mounting the skins of animals, esp[ecially] so as to make them appear lifelike." *Taylor*, 561 N.E.2d at 671 (quoting *Webster's New World Dictionary* 1372 (3d coll. ed. 1988)). Given this definition, any "record" — meaning any "written account of events or facts," *The American Heritage Dictionary* 700 (4th ed. 2001) – related to the practice of the taxidermist's art is subject to inspection under the Code. An "origin tag or label" is written information that matches an animal (or part thereof) with a taxidermist's written records, 520 ILCS 5/3.21(c), and thus falls within the plain meaning of "taxidermy records."

Analysis of the statute as a whole also demonstrates that "taxidermy records" include tags. 520 ILCS 5/3.21(b) lists the "written records" that taxidermists must keep on the animals they receive, including date information, information on the person from whom they received the animal, and information on the animal itself. The next section, 520 ILCS 5/3.21(c), establishes the tagging requirement. 520 ILCS 5/3.21(d) then explains that taxidermists must keep their "taxidermy records" open for inspection. The placement of the section on inspections, immediately following the sections on written records and tags, suggests that both written records and tags are subject to inspection as "taxidermy records." Furthermore, the terminology used in the statute demonstrates that tags are subject to inspection. A legislature's use of different language in separate clauses indicates that the legislature intended distinct meanings. *See, e.g., Barmes v. United States,* 199 F.3d 386, 389 (7th Cir. 1999); *Illinois Bell Tel. Co. v. Illinois Commerce Comm'n,* 840 N.E.2d 704, 712 (Ill. App. Ct. 2005) ("If the legislature uses certain words in one instance and different words in another, it intends different results." (citation omitted)). While Plaintiff argues that the Code only provides notice of searches of "written records" as that term is used in 520 ILCS 5/3.21(b), the Code uses a different term – "taxidermy records" – to describe the documents subject to inspection. The use of these different terms within the same chapter of the Code strongly suggests that the Code refers to two different categories of records when discussing "written records" and "taxidermy records." This further demonstrates that "taxidermy records" encompass both written records and tags.

The legislative intent of the statute further supports this conclusion. As discussed above, "section 3.21 reflects the [General Assembly's intention] to protect and regulate the hunting and capture of certain species," and § 3.21 was "enacted as a . . . means to ensure that protected animals are taken in compliance with the other provisions of the Code." *Taylor*, 561 N.E.2d at 672. Only by inspecting tags, which correspond to written records, may Illinois ensure that a given animal or animal part in the possession of a taxidermist was taken in compliance with the Code.

6

| STATEMENT |
| --- |

Plaintiff advances two arguments based on the Illinois Taxidermy Laws Handbook ("the Handbook"). Both arguments are unpersuasive. As an initial matter, Plaintiff should rely on the Code itself rather than the Handbook for its understanding of the scope of taxidermy inspections. The cover page of the Handbook states that the Handbook "is only intended as a guide to . . . state regulations, which are subject to change." (R. 51-8, Ill. Taxidermy Laws Handbook at i.) At any rate, Plaintiff's arguments based on the Handbook do not support its position. Plaintiff first points out that the Handbook differentiates between "records" and "tagging." (*See id.* at 4.) This merely tracks the text of the statute, which also distinguishes between written records and tags. Plaintiff also notes that the "'inspections' section of the Handbook does not refer to inspections of the 'coded origin tag or label,' but [instead] refers only to [inspections of] '[t]axidermy records.'" (R. 55-1, Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 5 (citing R. 51-8, Ill. Taxidermy Laws Handbook at 6).) Again, this is merely a restatement of the Code itself, which also provides for warrantless inspection of "taxidermy records." The Handbook adds nothing to the analysis and conclusion discussed above.

### B.      Limitation on Discretion of Inspecting Officers

Plaintiff does not challenge the second "adequate substitute for a warrant" requirement. To adequately limit the discretion of inspecting officers, searches by a statute must be carefully limited in time, place, and scope. *Burger,* 482 U.S. at 703. "Inspectors, in other words, cannot barge into an establishment at any time they want and inspect the place however they please." *Contreras,* 119 F.3d at 1291. Here, the Code sufficiently limits the discretion of inspecting officers. Inspecting officers may only inspect taxidermists during "reasonable hours," 520 ILCS 5/3.21(d), which is an adequate temporal restriction given that a statute need not create an inspection schedule. *See LeRoy,* 39 F.3d at 714; *see also Burger,* 482 U.S. at 711 (limiting time of inspection to "regular and usual business hours" is a sufficient temporal restriction). Furthermore, the Code adequately restricts the place of inspection by providing that inspectors are not permitted to search dwellings. 520 ILCS 5/1.19. Finally, as discussed above, the scope of searches is clearly limited to "taxidermy records," which adequately defines the scope of permissible inspection. As a result, the Code also satisfies the final *Burger* requirement.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment.

7